IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| JULIE HARRELL, | |
| Plaintiff, | CIVIL ACTION NO.: 5:17-cv-75 |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Craig R. Petersen ("the ALJ" or "ALJ Petersen") denying her claim for a period of disability and disability insurance and for Supplemental Security Income. (Doc. 1.) Plaintiff urges the Court to reverse the ALJ's decision and award her benefits, or in the alternative, remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. (Doc. 17.) For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**BACKGROUND**

On July 16, 2009, Plaintiff filed an application for a period of disability, disability insurance benefits, and Supplemental Security Income, alleging disability beginning May 15, 2009. (Doc. 10, p. 175.) Plaintiff's application was denied initially, upon reconsideration, and by an administrative law judge on March 25, 2011. (Doc. 10-2, pp. 121–33.) On June 29, 2011, the Appeals Council remanded the case back to an administrative law judge for further review.

(Id. at pp. 134–36.)  After another hearing, a different administrative law judge denied Plaintiff's applications a second time.  (Doc. 10-5, pp. 61–77.)  On May 13, 2014, the Appeals Council again remanded Plaintiff's case to ALJ Petersen to hold a supplemental hearing.  (Id. at pp. 80–82.)

On May 14, 2015, ALJ Petersen conducted a video hearing at which Plaintiff, represented by counsel, appeared and testified in Waycross, Georgia, while the ALJ presided in Savannah, Georgia.  Kim E. Bennett, a vocational expert, also appeared at the hearing.  (Doc. 10, p. 134.)  ALJ Petersen found that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 *et seq.* (the "Act").  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  (Id. at pp. 14–17.)

Plaintiff, born on August 11, 1975, was forty (40) years old when ALJ Petersen issued his final decision.  She has a high school education.  (Doc. 10, p. 144.)  Plaintiff has relevant past work experience as a programmer.  (Id.)

## DISCUSSION

**I.     The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and

2

> work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." 20 C.F.R. §§ 404.1520(c), 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to Step Three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At Step Four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at

3

693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff has not engaged in substantial gainful activity since May 5, 2009, the alleged onset date. (Doc. 10, p. 136.) At Step Two, the ALJ determined that Plaintiff's degenerative disc disease lumbar spine, degenerative disc disease thoracic spine, diabetes mellitus with peripheral neuropathy, degenerative joint disease left hip, asthma, tachycardia, fibromyalgia, obesity, depression, and anxiety were considered "severe" under the "severity regulation." (Id. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) At the next step, the ALJ determined that none of Plaintiff's medically determinable impairments met or medically equaled a listed impairment under the Regulations. (Id. at pp. 137–38.)

ALJ Petersen found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that Plaintiff can push/pull up to 10 pounds occasionally. (Id. at p. 138.) Plaintiff can stand/walk up to 2 of 8 hours, can sit up to 6 of 8 hours with normal breaks, can occasionally climb stairs and ramps, but not ropes, ladders, or scaffolds. (Id.) Plaintiff cannot crawl or perform overhead work, but can occasionally use the lower extremities to operate foot controls and can frequently handle, finger, and feel. (Id. at p. 139.) The ALJ also limited Plaintiff from working in concentrated exposure to heat, humidity, cold, gases, fumes, vibration, unprotected heights, and other hazards. (Id. at pp. 138–39.) The ALJ found Plaintiff capable of working limited to simple, routine, repetitive tasks, and work

involving simple work related decisions with few, if any, workplace changes. (Id. at p. 139.) Finally, ALJ Petersen determined Plaintiff can have occasional interactions with co-workers and supervisors, but no interaction with the public. (Id.)

At Step Four, ALJ Petersen found Plaintiff unable to perform her past relevant work as a programmer. (Id. at p. 144.) However, the ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of addresser, table worker, and final assembler, all of which are sedentary/unskilled jobs that exist in significant numbers in the national economy. (Id. at pp. 144–45.)

## II.    Issues Presented

Plaintiff contends that the ALJ erred in not considering her carpal tunnel syndrome ("CTS") and ulnar neuropathy to be severe impairments at Step Two. (Doc. 16, p. 2.) Plaintiff also contends that the ALJ failed to incorporate her mental impairments within the RFC analysis. (Id.)

## III.   Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.   Step Two Determination of Severe Impairments**

Plaintiff argues that ALJ Petersen improperly concluded that Plaintiff's CTS and ulnar neuropathy were not severe impairments at Step Two. (Doc. 16, p. 23.) Specifically, Plaintiff contends that the ALJ failed to give sufficient weight to consultative examiner Dr. Stephen Pappas' opinion that Plaintiff had "a significant impairment on the basis of . . . bilateral carpal tunnel syndrome and ulnar neuropathies at both wrists." (Id. at pp. 23–24.)

Defendant argues that Plaintiff failed to carry her burden of establishing that her impairments are severe. (Doc. 17, pp. 5–9.) Furthermore, Defendant argues that any error in the ALJ's finding at Step Two is harmless, because ultimately, the ALJ found in Plaintiff's favor at Step Two by determining her degenerative disc disease, diabetes mellitus with peripheral neuropathy, obesity, depression, and anxiety to be severe impairments. (Id. at pp. 5–6.) As such, the ALJ was required to proceed with Steps Three and Four.

At Step Two, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 404.1523, 416.920(a)(4)(ii) & (c), 416.920a(a), 416.923. A condition is severe if it "significantly limits claimant's physical or mental ability to do basic work activities." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. §§ 404.1521(a)–(b) & 416.921(a)–(b). Examples of "basic work activities" include not only physical functions but also: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).[1] Importantly, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

The record clearly indicates that ALJ Petersen did consider Plaintiff's CTS and ulnar neuropathy and found them to be severe impairments at Step Two. ALJ Petersen specifically stated that Plaintiff "has the following severe impairments . . . diabetes mellitus *with peripheral*

---

[1] The Court cites to the Regulations that were in effect at the time of the ALJ's decision on February 18, 2016.

*neuropathy*."  (Doc. 10, p. 136 (emphasis added).)   As Defendant correctly explained, "[p]eripheral neuropathy encompasses ulnar neuropathy and CTS."  (Doc. 17, pp. 5–6.)  "There are several types of peripheral neuropathies, the most common of which is linked to diabetes . . . . Common types . . . include carpal tunnel syndrome . . . . Ulnar neuropathy and carpal tunnel syndrome are common types of neuropathy . . . ."  Peripheral Neuropathy Fact Sheet, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Peripheral-Neuropathy-Fact-Sheet (last visited Aug. 29, 2018); see also Peripheral neuropathy, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last visited Aug. 29, 2018) (describing carpal tunnel syndrome as one type of peripheral neuropathy).  While the ALJ may not have specifically delineated the *type* of peripheral neuropathy Plaintiff has, it is clear that the ALJ did consider it to be severe.  Plaintiff claims that Defendant, in defining the term peripheral neuropathy, was attempting to "'fix' the Administrative Law Judge's inadequate findings regarding her severe impairments of bilateral carpal tunnel and ulnar neuropathy."  (Doc. 18, pp. 2–3.)  The Court finds this claim unpersuasive—the ALJ already included Plaintiff's CTS and ulnar neuropathy in his severity analysis, and indeed, found in Plaintiff's favor, by using a more encompassing term.

Moreover, even if the ALJ had failed to consider Plaintiff's CTS and ulnar neuropathy as severe impairments at Step Two, any error would be harmless because the ALJ proceeded with the sequential evaluation and addressed those impairments at both Step Three and the RFC analysis.  See Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [plaintiff's] sleep apnea, obesity, and edema were not severe impairments, that error was harmless because the ALJ considered all of his

8

...
...
...

impairments in combination at later steps in the evaluation process."). At Step Three, the ALJ noted that Plaintiff's peripheral neuropathy did not "meet or medically equal the criteria or severity of Listing 11.00, specifically Listing 11.14." (Doc. 10, p. 137.) Listing 11.14 ultimately refers back to 11.00C which states, "[t]he assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." 20 C.F.R. Pt. 404, Subpt. P. App. 1.[2] Thus, in analyzing whether Plaintiff met Listing 11.14, he necessarily considered Plaintiff's CTS and ulnar neuropathy. Additionally, the ALJ specifically addressed Plaintiff's CTS and ulnar neuropathy in his RFC assessment. (Doc. 10, pp. 141–142.)

Accordingly, the ALJ's determination of Plaintiff's severe impairments was proper and this enumeration of error is without merit.

## V.      Whether the ALJ's RFC Finding is Erroneous

Plaintiff also asserts that the RFC assessment is erroneous because ALJ Petersen did not include Plaintiff's mental impairments in the RFC finding. (Doc. 16, pp. 24–26.) Plaintiff cites to Dr. Marc Eaton's opinion for the proposition that Plaintiff "would not be able to continue completing assigned tasks in a timely manner over the course of the normal workday and workweek." (Id. at p. 26.)[3] Thus, Plaintiff avers that the "clear evidence shows she cannot sustain work abilities 8 hours a day, 5 days a week" as ALJ Petersen found. (Id.)

Defendant responds that the ALJ properly considered Plaintiff's mental impairments by looking at the medical evidence from consultative examiners, including Dr. Eaton, and other evidence of record. (Doc. 17, pp. 10–13.) Additionally, Defendant points out that the ALJ

---

[2] As previously stated, the Court uses the Listing of Impairments effective at the time of the ALJ's decision on February 18, 2016.

[3] Plaintiff does not argue in her brief that the ALJ improperly weighed Dr. Eaton's opinion. (Doc. 16.) Instead, she appears to allege that the ALJ failed to consider Dr. Eaton's findings whatsoever. (See Doc. 18, pp. 3–4 (alleging in her Reply Brief that the ALJ had "utter arbitrary disregard" for Dr. Eaton's findings and failed to give it "proper[] credit").

specifically addressed Dr. Eaton's findings and only assigned them some weight based on the medical record as a whole. (Id. at. Pp. 11–12.)

An RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 (July 2, 1996). "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d) & (e)(2).

ALJ Petersen stated that he considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence before determining Plaintiff's RFC. (Doc. 10, p. 139.) ALJ Petersen accommodated for Plaintiff's mental impairments by finding that Plaintiff has the RFC to work limited to simple, routine, and repetitive tasks, can perform work involving simple work related decisions with few, if any, workplace changes, and can have occasional interaction with co-workers and supervisors, but no interaction with the public. (Id. at pp. 138–39.)

In coming to this conclusion, ALJ Petersen specifically addressed Dr. Eaton's opinion. He observed that Dr. Eaton's Medical Source Statement noted that Plaintiff "had no impairment in the ability to understand and remember simple instructions, and carry out simple instructions." (Id. at p. 142.) Dr. Eaton reiterated that Plaintiff's "judgment was within normal limits . . . . Simple instructions were understood and executed without difficulty." (Id.) Specifically, Dr. Eaton found that Plaintiff "had a mild limitation in the ability to make judgments on simple work related decisions . . . [and] had a moderate limitation in the ability to interact appropriately with

the public, co-workers, and supervisors; and respond appropriately to usual changes in a routine work setting." (Id. at 142–43.)   ALJ Petersen then went on to assign some weight to Dr. Eaton's opinion because he "examined claimant and his opinion is consistent with his examination and evidence of record." (Id. at p. 139.)  Thus, on its face it is apparent that the ALJ did not display "utter arbitrary disregard" of Dr. Eaton's findings, but instead addressed them head-on and gave them some weight.  In fact, ALJ Petersen gave little weight to the State Agency psychologists' opinions that "claimant's mental impairment was nonsevere" because "additional evidence was entered into the record that shows claimant has severe mental impairments." (Id.)

Thus, not only did the ALJ consider and give weight to Dr. Eaton's opinion and consider Plaintiff's mental impairments in his RFC analysis, substantial evidence also supports ALJ Petersen's RFC finding.  Plaintiff's medical records for mental health therapy obtained between January 17, 2013 through May 21, 2014, indicate that she has issues with anxiety and depression.  (Doc. 10-6, pp. 133–183; Doc. 10-7, pp. 1–24.)  However, her psychiatric exams for this period demonstrate that she is within normal limits in behavior, speech, thought content, thought process and cognition.  (See, e.g., id. at pp. 27, 28, 119, 135, 149–50.)  Plaintiff's medical records from June 11, 2014 to August 26, 2014, for services obtained at Unison Behavior Health reflect the same.  (Doc. 10-8, pp. 53–65; see, e.g., id. at pp. 68, 78.)  Dr. Eaton's findings also reflect the same.  As stated earlier, Dr. Eaton found Plaintiff to be "logical, coherent, and relevant at a concrete level.  She was not circumstantial or tangential . . . . Judgment was within normal limits. . . . There were no reports or indications of obsessions, compulsions, or phobias.  Ms. Harrell did not appear to be grossly antisocial.  Simple instructions were understood and

11

executed without difficulty. There were no unusual gestures or mannerisms." (Doc. 10-11, p. 70.)

Consequently, the record shows that the ALJ specifically considered Plaintiff's mental impairments when formulating the RFC and accounted for them by limiting Plaintiff to simple, routine, and repetitive tasks, work involving simple work related decisions with few, if any, workplace changes, and only occasional interaction with co-workers and supervisors, but no interaction with the public. ALJ Petersen considered the objective medical and other evidence of record, including Dr. Eaton's opinion, and substantial evidence supports his determination. Accordingly, this enumeration of error is also without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of

the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 30th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA